FILED

2007 Aug-30  PM 01:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

JAMES RIDGE,

     Plaintiff,

vs.                                       CASE NO. CV-06-J-1880-NW

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

     Defendant.

### MEMORANDUM OPINION

The plaintiff filed the complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendant wrongfully terminated his long term disability benefits, in violation of 29 U.S.C. § 1001, *et seq*. The defendant filed a motion for summary judgment (doc. 17) and evidence and a memorandum in support of said motion (docs. 18 and 19), to which the plaintiff filed a motion, brief and evidence in opposition (docs. 22-29). The defendant thereafter filed a reply (doc. 33). The parties also filed a joint stipulation regarding benefits still payable under the disability policy in question, should the court find that reinstatement of benefits is appropriate (doc. 30). Upon consideration of the pleadings, memoranda and evidentiary submissions received, the court concludes that the defendant's motion for summary judgment is due to be granted as no genuine issues of material fact remain in this case.

## FACTUAL BACKGROUND

The underlying facts of this case are not in dispute.  The plaintiff was employed by Occidental Petroleum Company, through which plaintiff had a long-term disability (LTD) policy.  The defendant is the Claims Administrator for the LTD plan offered by Occidental Petroleum Company to its employees.  Affidavit of Chris B. Davis, ¶ 5.  Plaintiff asserts that defendant wrongfully terminated his long-term disability benefits under the definition of "any occupation" disability as that term is used in the policy.

The plaintiff was hired by defendant in 1969.  AR 0059, 0690.  He worked as an Instrument Mechanic until he became disabled and began receiving plan benefits on  July 15, 1997.  AR 0059, 0685.  The plaintiff has also been receiving Social Security Disability benefits since December 1998, retroactive to July 15, 1997, based on a bulging disc at L4-5 and high blood pressure.  AR 0631-0636.  The plaintiff received LTD benefits until June 1, 2005, when defendant determined that the plaintiff no longer met the policy definition of disability.  AR 0003.

The plaintiff alleges an inability to perform any job due to ailments which include an inability to walk or stand for more than ten or fifteen minutes, an inability to bend, an inability to reach overhead, severe pain in his back and ongoing pain and numbness in his legs.  AR 0003, 0702.  His diagnoses include a minimally bulging

disc at L4-5; degenerative disk disease, chronic pain syndrome, hypertension, and depression.  AR 0010; 0565, 0712-713.

After 24 months of benefits, the defendant undertook an evaluation of the plaintiff to determine his entitlement to benefits under the "any occupation" definition in the LTD policy, and the plaintiff's benefits continued.  AR 00536-537.

Based on a periodic continuing disability review in 2001, the defendant questioned why, based on the plaintiff's physician's stated limitations, the plaintiff could not engage in sedentary employment.  *See e.g.*, AR 0450, 0711.  The plaintiff's physician, Dr. Terrence T. Hart, has continuously asserted that the plaintiff would never be able to return to any work.  AR 0425-0428, 0496-0499, 0515, 0520-0523, 0699, 0701, 0711, 0772-0774.  He has stated that despite plaintiff's ability to sit, stand, walk and drive for one to two hours each, the plaintiff also has to lie down three to four times a day to rest for 30 minutes at a time.  AR 0758.

The defendant hired a private investigator to conduct surveillance on the plaintiff in 2004 to independently clarify the plaintiff's activity level.  AR 0299, 0384-0400, 0404-415.  Based on the video surveillance of the plaintiff, the defendant sought an independent medical review from Dr. Harvey A. Popovich, M.D., in February 2005.  AR 0332-336.  Based on his review of the plaintiff's medical records, Dr. Popovich concluded that the plaintiff was capable of returning to work on a full

time basis and could perform the physical requirements of light duty employment. AR 0335.  Dr. Popovich opined that the plaintiff's subjective complaints and claimed abilities were not consistent with his diagnosis and documented medical and investigational findings.  AR 0335.

The defendant then sent the plaintiff to Dr. Eston Norwood, III, M.D., for an independent medical examination.  AR 0309-0313, 0318, 0322.  According to Dr. Norwood, the plaintiff had no objective findings which supported his impairments. AR 0311.  Dr. Norwood believed the plaintiff could function at a level greater than what he claimed, including sitting for four hours at a time, standing for two hours at a time, walking for two hours at a time, and lifting up to ten pounds constantly. AR 0312-0313.  The defendant also obtained an employability analysis report, which identified eight positions to which the plaintiff had transferrable skills and which also met the salary requirements as defined for "any occupation" under the LTD policy. AR 0140-0165.

The plaintiff's physician disputes the findings of Dr. Norwood and asserts that the plaintiff's maintenance dose of Lortab enables him to perform activities of daily living.  AR 0175.  In response to the conclusions of Dr. Norwood, Dr. Hart stated that:

> I am sure this was a difficult patient for Dr. Norwood to evaluate.  It
> must be remembered that this patient has been off work since 1997 ....
> He has chronic pain syndrome with more emphasis on his lower back
> pain than his neck and hands.  He is on maintenance Lortab 7.5 mgs,
> which he takes four per day.  This enables him to carry on with his
> activities of daily living ....  I realize he does not have any
> neuroariatomical surgical (sic) correctable lesions in his low back.  I
> certainly do not think he is able to lift, carry, push or pull 10 lbs.
> constantly.  He may be able to do this occasionally .... If he has to do
> activities, which include any lifting, frequent stooping, kneeling,
> crouching, crawling, or reaching over shoulder height at waist level or
> below wait level (sic), as mentioned in Dr. Norwood's report, his back
> pain would probably get worse and then I would have to deal with the
> problem of escalating his dose of Hydrocodone....

AR 316.

Based on the above information, the defendant terminated the plaintiff's LTD

benefits, effective June 1, 2005.  AR 0297-0304.  The plaintiff disputes the

conclusion that he is not disabled.  Plaintiff was seen by Thomas Elliott, a

Rehabilitation and Vocational expert, in November 2005. AR 0099-0105. Mr. Elliott

stated that in his opinion, the plaintiff does not retain the physical capacity to perform

any of the positions identified in the employability analysis report.  AR 0104-0105.

Mr. Elliott further opined that the activities in which the plaintiff engaged as seen on

the surveillance videos are no more than "routine, inconsequential activities" and

within the limitations set forth by Dr. Hart.  AR 0102.

The plaintiff pursued his administrative remedies, during which process the defendant obtained another review of the plaintiff's medical records by an independent doctor.   AR 0080-0087.   This review, conducted by Dr. Suresh Mahawar, concluded that Dr. Hart "has been recommending excessive restrictions since October 5, 1998 through May 3, 2005 without the evidence for objective clinical findings supporting his medical opinions.  His physical examination notes do not provide evidence for objective findings such as disuse muscle atrophy or focal neurological deficit."  AR 0083.  Dr. Mahawar believed the plaintiff could lift 20 to 40 pounds frequently, with no limitations in sitting, standing, driving and walking. AR 0085.

The parties do not dispute that the defendant insures the plan, is the claims administrator and has sole authority to construe the terms of the policy and to determine benefit eligibility.  *See* AR 0484. The sole issue raised in this case is factual, namely whether or not the plaintiff is disabled from performing "any occupation," as defined by the LTD policy.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e).  In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v.  Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

The issue before the court is whether the factual finding of the defendant, namely that the plaintiff is not disabled from "any occupation," is correct.  The Eleventh Circuit Court of Appeals has set out the following steps to apply in reviewing "virtually all ERISA-plan benefit denials:"

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecommunications, Inc,*. 373 F.3d 1132, 1138 (11th Cir.2004).

The plaintiff argues that the "heightened arbitrary and capricious" standard should apply as the plaintiff administrator operated under a conflict of interest. Plaintiff's brief, at 20.   The defendant asserts that the modified arbitrary and capricious standard is appropriate.  Defendant's memorandum in support of summary judgment, at 16.  For the reasons explained below, the court does not reach this issue.

The court is limited in its consideration of the evidence to the information known to the administrator at the time the decision was made. *See e.g., Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir.1989); *Lee v. Blue Cross/Blue Shield of Ala.,* 10 F.3d 1547, 1550 (11th  Cir.1994).  Applying the rules set forth in *Williams, supra*, the court must first determine whether the decision of the defendant was "wrong."

The evidence before the defendant at the time of its decision demonstrates that the plaintiff's treating physician, Dr. Hart, maintained that the plaintiff was totally and permanently disabled.  During a continuing disability review, the defendant questioned why the plaintiff could not perform sedentary work, and thereafter hired a surveillance firm to secretly videotape the plaintiff.  The defendant hired an independent medical examiner, Dr. Popovich, to review the disability status of the plaintiff.  Based on the videotaped activities of the plaintiff, as well as a review of the medical records provided to the defendant, Dr. Popovich concluded that the plaintiff was capable of light work activity.

The plaintiff was then sent for an examination by an independent physician, Dr. Norwood, who also concluded that the plaintiff was capable of full-time work.  The defendant then obtained an employability analysis report which identified multiple positions within the plaintiff's identified limitations.  Based on this evidence, the

defendant determined that the plaintiff was no longer disabled under the "any occupation" standard in the LTD policy.

Defendant argues that the plaintiff has never identified any objective evidence to support his disability.  Defendant's brief at 18-19.  The defendant points out that the only clinical evidence regarding the plaintiff's diagnoses were one MRI taken in 1997, and one set of x-rays from June 2002.  AR 0084, 0310, 0867.  The defendant also argues that based on the activities the plaintiff performs in the surveillance videos, the plaintiff is capable of the very activities which Dr. Hart avers the plaintiff cannot do.  Defendant's memorandum, at 21.  The plaintiff responds that based on Dr. Hart's opinions, the plaintiff should have been considered disabled and that defendant did not properly consider the totality of the medical evidence of record, because under a proper consideration, the plaintiff is disabled.  *See* plaintiff's memorandum, at 25-28.

However, the defendant was not bound to give the opinions of the plaintiff's treating physician special deference when it evaluated the merits of the plaintiff's claim for continued benefits.  Rather ERISA requires "full and fair" assessment of the plaintiff's claims.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 1967, 155 L.Ed.2d 1034 (2003).  The Supreme Court has explicitly stated that this standard does not require giving a treating physician's opinion more

weight than that of other evidence.  *Id.*, 538 U.S. at 825, 123 S.Ct. at 1967 ("We hold that plan administrators are not obliged to accord special deference to the opinions of treating physicians.  ERISA and the Secretary of Labor's regulations under the Act require "full and fair" assessment of claims and clear communication to the claimant of the "specific reasons" for benefit denials .... But these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition").

Similarly, the awarding of benefits under the Social Security Act is not proof of disability for purposes of ERISA.  "[T]he Court 'owes no deference to findings made under the Social Security Act.'"  *Richards v. Hartford Life and Accident Ins. Co.,* 356 F.Supp.2d 1278, 1288 (S.D.Fla.2004).

The court is of the opinion that, given the evidence before the defendant at the time it made its decision, that decision was not "wrong."  While the plaintiff insists he is disabled, he has provided no evidence in support of this other than Dr. Hart's opinions.  However, the burden of proving disability belongs to the plaintiff.  *Reeve v. Unum Life Ins. Co. of America,* 170 Fed.Appx. 108, 112, (11th Cir.2006); citing *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir.2001). See also *Stvartak v. Eastman Kodak Co.,* 945 F.Supp. 1532, 1536 (M.D.Fla.1996) *aff'd,* 144 F.3d 54 (11th Cir.1998) (quoting 29 U.S.C. § 1132(a)) ("Under ERISA, the

Plaintiff has 'the burden of showing that he is entitled to the benefits under the terms of [the] plan'"). The plaintiff failed to produce any evidence which refutes the findings of the independent medical examiners.  Based on those opinions, the defendant determined specific jobs that the defendant could perform, given his limitations.  The court therefore concludes that the defendant's determination was not "wrong."  As such, the court must affirm the decision of the defendant. *Williams*, 373 F.3d at 1138.

Having considered the foregoing, the court is of the opinion that the defendant's motion for summary judgment is due to be granted as no genuine issues of material fact remain for trial and the defendant is entitled to judgment in its favor as a matter of law.

It is therefore **ORDERED** by the court that the defendant's motion for summary judgment be and hereby is **GRANTED**.

**DONE** and **ORDERED** this the 30th  day of <u>August</u>, 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

12